

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 12, 2019

**BY ECF & ELECTRONIC MAIL**

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York  10007

        **Re:**   *United States v. Daniel Scott*
                  **11 Cr. 171 (JMF)**

Dear Judge Furman:

      The Government respectfully submits this memorandum in advance of the resentencing proceeding scheduled in the above-captioned case on Thursday, December 19, 2019, at 2:45 p.m., and in response to the defendant's sentencing letters dated November 25, 2019 (Doc. No. 100) and December 3, 2019 (Doc. No. 104).  For the reasons set forth below, the Government submits that the Court should impose an above-Guidelines sentence.

**I.**      **Procedural History**

      The defendant was originally charged by complaint dated February 7, 2011 (the "Complaint")—docket number 11 Mag. 324, attached as Exhibit A—with Hobbs Act robbery conspiracy and possession of a firearm as an armed career criminal in violation of Title 18, United States Code, Sections 1951, 922(g)(1), and 924(e).  As alleged in the Complaint, the defendant had previously sustained two New York State robbery convictions and a third federal Hobbs Act robbery conspiracy conviction prior to committing the offenses charged in this case. (*See* Ex. A at ¶ 9).

      Just before a suppression hearing was scheduled to proceed on October 11, 2012, the defendant pled guilty pursuant to a plea agreement to Counts One and Two of the Indictment.  The plea agreement stipulated to an offense level of 31, a Criminal History Category of VI, and an applicable Guidelines range of 188 to 235 months' imprisonment, with a mandatory minimum sentence pursuant to Section 924(e) of 15 years' imprisonment.

Letter to Hon. Jesse M. Furman
December 12, 2019

      Approximately one month later, on November 14, 2012, the defendant moved to withdraw his guilty plea.  At a subsequent conference held before Judge Griesa on January 16, 2013, the Court denied Scott's motion.  Sentencing was ultimately scheduled for May 1, 2013.

      On May 1, 2013, the parties appeared before Judge Griesa for Scott's sentencing.  After hearing from the attorneys and the defendant, and noting that "the bottom of the guidelines range is not significantly different from the mandatory minimum [sentence of 15 years imprisonment]," the Court imposed a concurrent sentences of 188 months' imprisonment on Counts One and Two.  In articulating the basis for that sentence, Judge Griesa stated:  "[I]t is inevitable that a judge considers the factors in 18 U.S.C. Section 3553, but here, with a mandatory statutory minimum of 15 years and considering the seriousness of the crime and the involvement of firearms, I don't think that there is anything more to say.  I think that's it."  (5/1/2013 Sentencing Tr., Doc. No. 43, at 12).

      Scott subsequently appealed his conviction and sentence, claiming that Judge Griesa abused his discretion in denying the defendant's plea withdrawal motion without a hearing, that the defendant's plea was not knowing and voluntary, and that the defendant's speedy trial rights under the Sixth Amendment of the Constitutions were violated.  By Summary Order dated June 18, 2014, the Second Circuit affirmed the District Court's judgment.  *See United States v. Scott*, 569 F. App'x 55 (2d Cir. 2014).

      In September 2015, Scott filed a *pro se* habeas petition under Title 28, United States Code, Section 2255 (the "Petition"), challenging his conviction and sentence on variety of grounds, including ineffective assistance of counsel.  (*See* Doc. No. 53).  The Government filed a response to the Petition in January 2016.  (*See* Doc. No. 58).  Thereafter, on June 24, 2016, having been appointed to represent the defendant for the purpose of determining whether the defendant might benefit from the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), the Federal Defenders filed a letter on the defendant's behalf arguing that several of the defendant's robbery convictions no longer constituted "violent felonies" within the meaning of Section 924(e)(2)(B).  (*See* Doc. No. 65).

      Following a series of additional Supreme Court and Second Circuit decisions relevant to that determination, the Government conceded in a letter dated July 1, 2019, that the defendant's prior Hobbs Act robbery conspiracy conviction no longer constituted a "violent felony" under Section 924(e), and that he was therefore entitled to a plenary resentencing with respect to Counts One and Two of the Indictment, without regard to the 15-year mandatory minimum sentence otherwise required by Section 924(e)(1).  (*See* Doc. No. 89).  By Order dated July 10, 2019, the Court scheduled a plenary resentencing proceeding on Counts One and Two of the Indictment.[1]  (*See* Doc. No. 92).

---

[1]  In a subsequent Order dated July 26, 2019, the Court denied the remaining claims in the Petition as moot, without prejudice to refiling (if appropriate) after the plenary resentencing . . . ."  (*See* Doc. No. 94).

Letter to Hon. Jesse M. Furman
December 12, 2019

## II.    The Guidelines Range

In its revised Presentence Report (the "Revised PSR"), the United States Probation Office (the "Probation Office") has calculated a new Guidelines range in light of the fact that the defendant no longer qualifies as an armed career criminal under Section 924(e). According to the Probation Office, the newly calculated advisory Guidelines range is 57 to 71 months' imprisonment. In his letter of December 3, 2019, the defendant challenges these calculations, arguing that Hobbs Act robbery conspiracy does not qualify as a Guidelines "crime of violence." (*See* Doc. No. 104).

The Hobbs Act's robbery provision covers robberies accomplished by threats of force, violence, or injury against a "person or property." 18 U.S.C. 1951(b)(2). While that provision does not categorically match the elements clause of Guidelines Section 4B1.2(a)(1), which is limited to force against a "person," Hobbs Act robbery qualifies as a crime of violence under the enumerated offenses of robbery and extortion.

Even though generic robbery under Section 4B1.2(a)(2) does not include robbery accomplished solely by threats to property,[2] violations of the Hobbs Act involving threats to property would come within the meaning of "extortion" in Section 4B1.2(a)(2). "Extortion" is defined in the 2016 Guidelines as "obtaining something of value from another by the wrongful use of (A) force, (B) fear of physical injury, or (C) threat of physical injury. U.S.S.G. § 4B1.2 comment. (n.1). Notably, this definition does not distinguish threats against persons from those against property, and thus would include any conduct prohibited by the Hobbs Act that was not already covered by the generic definition of robbery.

Accordingly, Hobbs Act robbery constitutes a "crime of violence" under the Guidelines. Because "'crimes of violence' include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses," U.S.S.G. § 4B1.2 comment. (n.1), conspiracy to commit Hobbs Act robbery likewise constitutes a "crime of violence" under the Guidelines.

For these reasons, the Probation Office properly calculated a base offense level of 22 under U.S.S.G. § 2K2.1(a)(3)—applicable where "the offense involved a semiautomatic firearm that is capable of accepting a large capacity magazine" and "the defendant committed . . . the . . . offense subsequent to sustaining one felony conviction of . . . a crime of violence . . . ."—based on the defendant's Hobbs At robbery conspiracy conviction, and ultimately arrived at the correctly calculated total offense level of 23 and advisory Guidelines range of 57 to 71 months' imprisonment.[3]

---

[2] *See, e.g.*, *United States v. Walker*, 595 F.3d 441 (2d Cir. 2010) (defining generic robbery "as the taking of property from another person or from the immediate presence of another person by force or intimidation." (emphasis omitted)).

[3] To the extent that the Court rejects the Government's position regarding the defendant's Hobbs Act robbery conspiracy conviction, the applicable offense level would be 22, calculated under the robbery Guideline, Section 2B3.1. Specifically, pursuant to Section 2B3.1(a), the base offense level would be 20. Pursuant to Section 2B3.1(b)(2)(C), because a firearm was brandished or possessed, five levels would be added. Finally, three levels would be deducted for

3

### III. An Above-Guidelines Sentence is Warranted

The Government submits that, in light of the defendant's violent criminal history and the nature of the offenses of conviction, the Section 3553(a) factors counsel in favor of an above-Guidelines sentence in this case.

First, given the nature of the defendant's criminal conduct, an above-Guidelines sentence is needed to "reflect the seriousness of the offense," "promote respect for the law," and "provide just punishment for the offense." *See* 18 U.S.C. § 3553(a)(2)(A). The defendant planned and attempted to execute a gunpoint robbery of an armored truck, lying in wait inside of a public park in the Bronx. He possessed all of the tools necessary to commit the robbery—a semi-automatic assault weapon equipped with an extended magazine containing 32 rounds of ammunition,[4] a silencer fitting the gun, gloves, and a ski mask—and was caught in the act of using a monocular to surveil the truck, which was parked nearby. Had New York City Police Department officers not intervened, the armed robbery may well have occurred, placing the occupants of the armored truck, innocent bystanders, and members of the general public at serious risk of physical injury and even death. Indeed, the defendant's possession of a silencer underscores his willingness to use the gun if necessary in carrying out the planned robbery. The gravity of the offense committed by the defendant demands a significant sentence of imprisonment, to provide just punishment and to reflect the severity of his conduct.

The defendant also poses a continued threat to the public. *See* 18 U.S.C. § 3553(a)(2)(C) (sentencing court shall consider the need "to protect the public from further crimes of the defendant"). The instant offense represents the defendant's *fourth* armed robbery conviction. In 1980, the defendant carjacked a truck load of equipment while armed with a gun; in 1983, the defendant committed another armed hijacking; between January and June 1992, he operated as part of a robbery crew that hijacked or attempted to hijack 21 different commercial vehicles at gunpoint. The defendant also has numerous criminal convictions relating to the theft or attempted theft of vehicles, including one arrest during which he pointed a gun at the arresting officer and also attempted to strike the officer. Even while he has been incarcerated on this case, the defendant has been sanctioned by the Bureau of Prisons ("BOP") for violent conduct. BOP records attached to the Revised PSR reflect that in December 2011, prison guards recovered a sharpened metal weapon with a cloth handle from under the defendant's mattress. And in March 2018, it appears that the defendant was sanctioned for refusing to obey an order and was counseled that the next occurrence would likely result in a "stalking charge." Based on the defendant's lengthy and violent criminal history, the only way to protect the public from his propensity toward such offenses is confinement. An above-Guidelines sentence of imprisonment is needed to serve that purpose.

As for deterrence—in particular, specific deterrence—it is clear that the defendant has been undeterred by his prior sentences. *See* 18 U.S.C. § 3553(a)(2)(B) (sentencing court shall consider the need "to afford adequate deterrence to criminal conduct"). The defendant has

---

timely acceptance of responsibility under Section 3E1.1. At offense level 22, the applicable advisory Guidelines range would be 51 to 63 months' imprisonment.

[4] A photograph of the gun is attached hereto as Exhibit B.

Letter to Hon. Jesse M. Furman
December 12, 2019

sustained a total of five felony convictions and five misdemeanor convictions.  In his most recent armed robbery case, a 1993 federal Hobbs Act robbery conviction in the Eastern District of New York, the defendant received a sentence of 168 months' imprisonment.  That sentence, however, failed to deter the defendant from conspiring to rob an armored truck at gunpoint in the instant case.  Despite his intimate familiarly with the criminal justice system, and his many brushes with the law, the defendant has remained undeterred.  Rather than learn from his mistakes, he continued in his brazen disregard for the rule of law.  The principle of deterrence demands a significant sentence of imprisonment—one that properly accounts for the 168 month sentence he received before committing the robbery offense here– to impress upon Mr. Scott and others in his position that such regular violations of the law will not be tolerated.

Thus, in light of "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), an above-Guidelines sentence is necessary to satisfy at least three of the statutory sentencing objectives:  (1) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, *id.* § 3553(a)(2)(A); (2) the need to protect the public from further crimes of the defendant, *id.* § 3553(a)(2)(C); and (3) the need to afford adequate deterrence to criminal conduct, *id.* § 3553(a)(2)(B).

## II.     Conclusion

For the reasons set forth herein, the Government submits that an above-Guidelines sentence is appropriate in this case.[5]

> Respectfully submitted,
>
> GEOFFREY S. BERMAN
> United States Attorney
>
> By:    /s/ Christopher J. DiMase
> Christopher J. DiMase
> Assistant United States Attorney
> Southern District of New York
> (212) 637-2433

cc:     Jonathan Marvinny, Esq. (by ECF)

---

[5] By Order dated August 26, 2019, the Court directed the parties to address whether the factual basis for the defendant's plea to Count Two is adequate in light of *Rehaif v. United States*, 139 S. Ct. 2191 (2019).  The defendant stated in his November 25, 2019 sentencing letter that he does not intend to advance such a claim.  In light of the defendant's position, the Government respectfully requests that, at the resentencing proceeding, the Court ask the defendant to acknowledge that he knew he was a felon at the time that he possessed the firearm in this case, on or about August 12, 2010.

# EXHIBIT A

**11 MAG 324**

Approved: _____
CHRISTOPHER J. DIMASE
Assistant United States Attorney

Before:  HONORABLE THEODORE H. KATZ
         United States Magistrate Judge
         Southern District of New York

- - - - - - - - - - - - - - - - - -x
                                    :  SEALED
UNITED STATES OF AMERICA            :  COMPLAINT
                                    :
      - v. -                        :  Violations of
                                    :  18 U.S.C. §§ 1951,
                                    :  922(g)(1), & 924(e)
DANIEL SCOTT,                       :
                                    :  COUNTY OF OFFENSE:
            Defendant.              :  BRONX
                                    :
- - - - - - - - - - - - - - - - - -x

SOUTHERN DISTRICT OF NEW YORK, ss.:

   PAUL COURTNEY, being duly sworn, deposes and says that he is a Detective in the New York City Police Department ("NYPD"), assigned to the Federal Bureau of Investigation ("FBI")/NYPD Joint Bank Robbery Task Force, and charges as follows:

                           COUNT ONE

   1.   On or about August 12, 2010, in the Southern District of New York and elsewhere, DANIEL SCOTT, the defendant, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and would and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, SCOTT, and others known and unknown, agreed together to commit an armed robbery of an armored truck in the Bronx, New York.

            (Title 18, United States Code, Section 1951.)

## COUNT TWO

2. On or about August 12, 2010, in the Southern District of New York, DANIEL SCOTT, the defendant, unlawfully, willfully, and knowingly, after having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, to wit: (i) a conviction on or about January 8, 1985, in Bronx Supreme Court, Bronx County, for Robbery in the First Degree: Displays What Appears to be a Firearm, a class B felony, in violation of New York Penal Law Section 160.15(4); (ii) a conviction on or about January 9, 1985, in Bronx Supreme Court, Bronx County, for Robbery in the First Degree: Forcible Theft Armed With a Deadly Weapon, a class B felony, in violation of New York Penal Law Section 160.15(2); (iii) a conviction on or about February 2, 1995, in the United States District Court for the Eastern District of New York, for Conspiracy to Affect Commerce by Robbery, in violation of Title 18, United States Code, Section 1951; did possess in and affecting commerce, a loaded firearm, to wit, an Ingram MAC-11 nine millimeter machine pistol, fitted with an extended magazine containing 32 nine millimeter rounds of ammunition, which had previously been shipped and transported in interstate and foreign commerce.

(Title 18, United States Code, Sections 922(g)(1) and 924(e).)

The bases for my knowledge and the foregoing charges are, in part, as follows:

3. I am an NYPD Detective, assigned to the FBI/NYPD Joint Bank Robbery Task Force. I have been personally involved in the investigation of this matter, and I base this affidavit on that personal experience, as well as on my conversations with other law enforcement agents and cooperating witnesses, and my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

4. At approximately 11:30 am on or about August 12, 2010, near the intersection of Crotona Avenue and Crotona Park North in Bronx, New York, I observed a black Dodge Caravan (the "Caravan") parked in close proximity to a Rapid Armored truck.

5. With the assistance of other officers, I approached the Caravan. I observed one person in the driver's seat, later identified to me as "CC-1." I observed another

person in the center seat of the second row of the Caravan, later identified to me as DANIEL SCOTT, the defendant. I observed a black gym bag located behind the third row of seats in the Caravan.

6. After SCOTT and CC-1 were removed from the Caravan, I observed and subsequently recovered a small monocular and an empty leather pouch fitting the monocular from the second row seat of the Caravan, immediately to the left of where SCOTT was seated. I also recovered the following, among other items, from the black gym bag located behind the third row of seats in the Caravan: (a) an Ingram MAC-11 nine millimeter machine pistol, fitted with an extended magazine containing 32 nine millimeter rounds of ammunition; (b) a silencer fitting the firearm; (c) a black ski mask; (d) four pairs of work gloves; and (e) a black hooded sweatshirt.

7. Both SCOTT and CC-1 were transported to an NYPD precinct in the Bronx for arrest processing. After SCOTT waived his Miranda rights, he stated to me, in sum and substance and in part:

(a) Approximately three weeks before August 12, 2010, CC-1 approached SCOTT about trying to rob an armored truck.

(b) On or about August 12, 2010, SCOTT called CC-1 and told CC-1 that he was interested in doing the robbery.

(c) SCOTT drove in the Caravan to his home in the Bronx and retrieved a black gym bag containing what he described as a black Uzi, a muffler for the gun, gloves, and hoodies.

(d) SCOTT then picked up CC-1 in the Caravan, and they drove around the area looking for an armored truck.

(e) While driving, SCOTT and CC-1 saw an armored truck pulled over to the side of the road in Crotona Park, and they parked the Caravan nearby to observe the truck.

(f) SCOTT and CC-1 planned to follow the truck around until the opportunity came to rob the couriers.

(g) SCOTT was going to drive, and CC-1 was going to run up behind the guards while carrying the gun, and grab a bag of money from one of the guards.

8. I have reviewed criminal history records pertaining to DANIEL SCOTT, the defendant, which reflect that the defendant was convicted as follows:

(a) On or about January 8, 1985, in Bronx Supreme Court, Bronx County, for Robbery in the First Degree: Displays What Appears to be a Firearm, a class B felony, in violation of New York Penal Law Section 160.15(4).

(b) On or about January 9, 1985, in Bronx Supreme Court, Bronx County, for Robbery in the First Degree: Forcible Theft Armed With a Deadly Weapon, a class B felony, in violation of New York Penal Law Section 160.15(2).

(c) On or about February 2, 1995, in the United States District Court for the Eastern District of New York, for Conspiracy to Affect Commerce by Robbery, in violation of Title 18, United States Code, Section 1951.

9. Based on my training and experience, I know that Ingram MAC-11 nine millimeter machine pistols are not and have never been manufactured in New York State.

WHEREFORE, deponent prays that DANIEL SCOTT, the defendant, be arrested and imprisoned, or bailed, as the case may be.

PAUL COURTNEY, DETECTIVE
FBI/NYPD JOINT BANK ROBBERY TASK FORCE

Sworn to before me this
7th day of February, 2011

HONORABLE THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

# **EXHIBIT B**

